UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD WARD,

    Plaintiff,

vs.                                                        Case No. 12-11993

STATE OF MICHIGAN and
TROY SZUKHENT,                            HON. AVERN COHN

    Defendants.
_____/

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 11)**

### I. INTRODUCTION

This is an excessive force case under 42 U.S.C. § 1983 with a pendant state law claim. Plaintiff Edward Ward claims defendant Michigan State Trooper Troy Szukhent (Szukhent) violated his rights by shooting him in the leg. Ward was a passenger in a vehicle that fled from the police. During an attempted traffic stop, Ward left the car and ran to a nearby doghouse. Szukhent and another officer eventually located Ward, and during a confrontation with the officers, Szukhent shot Ward in the leg. Ward is suing Szukhent and the State of Michigan. He says the State of Michigan is liable under a failure to train theory. The complaint is in two counts, phrased as follows:

> count I- gross negligence, intentional, willful, reckless, and wanton misconduct on the part of all defendants pursuant to MCL 691.1407
>
> count II- Fourth and Fourteenth Amendment violations

Now before the Court is defendants' motion for summary judgment (Doc. 11). For the reasons that follow, the motion will be granted in part and denied in part.

## II. BACKGROUND

The facts as gleaned from the parties' papers follow.

On March 15, 2012, around midnight, Michigan State Troopers Jasen Sack and Patrik Roti attempted to initiate a traffic stop on a vehicle driven by Rapheall Murray for "no plate, running stop signs, and subsequently reckless driving." Ward was a passenger in the vehicle.

Szukhent says that, during the pursuit, Ward exited the vehicle and fled on foot. Ward says he was sleeping in the vehicle, and when it came to a stop, he woke up and exited the vehicle, fleeing to a place of safety.

Roti pursued Ward on foot; Sack continued the vehicle pursuit. Roti identified himself as a police officer and asked Ward to stop. Szukhent says Roti observed Ward holding his waistband and looking at Roti's direction; Ward says that he never touched his waistband. Eventually, Roti lost visual contact with Ward and returned to the area where he last saw him. Sergeant Vennette of the Flint City Police Department advised Roti that a local resident reported seeing a man in a white shirt running up a nearby driveway one house east of 425 Parkway street.

Szukhent arrived on the scene with K9 Palin, a Michigan State Police dog. Roti advised Szukhent that the suspect was "holding the waistband of his pants as if holding an object" as he fled. Szukhent and Roti used the K9 to track Ward to the backyard of a nearby house, hiding inside a doghouse. Szukhent was holding the K9 on a leash in his left hand.

Szukhent unholstered his gun, holding it in his right hand, and ordered Ward to show his hands and exit the doghouse. Roti unholstered his taser and stood to Szukhent's left.

Szukhent says he and Roti were six to eight feet from the doghouse; Ward denies they were that close. Ward began to exit the doghouse feet first. Szukhent and Roti observed that Ward did not have a weapon in his hands.

Szukhent began to reholster his gun. The parties dispute whether Ward returned his hands back into the doghouse; Szukhent says he did and Ward says he did not.

As he was reholstering his gun, Szukhent says the K9 lunged toward Ward as he made a quick movement to exit the doghouse. Ward says the K9 did not lunge at him or make any sudden movement. Almost simultaneously to when Szukhent says the K9 lunged at Ward, pulling on the leash in his left hand, Szukhent's gun, which he was still holding in his right hand, went off and shot Ward in his right leg.

Not knowing what happened, Roti handcuffed Ward.

Szukhent says he did not intentionally shoot Ward. Rather, the shot was a reaction to the K9 tugging on the leash in his other hand. Ward says the K9 did not tug at the leash and the shot was intentional.

After Szukhent and Roti realized what had happened, they examined Ward and noticed he had been shot. They immediately called for medical assistance.

Roti searched Ward and did not find any weapons.

### III. STANDARD OF REVIEW

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).  The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial.  Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).  The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### IV. ANALYSIS

The Court addresses Ward's federal and state law claims separately.

### A. Federal Law Claims

### 1. Szukhent

Ward brings a claim against Szukhent under 42 U.S.C. § 1983[1] for excessive force in violation of the Fourth Amendment.  Szukhent says he is entitled to qualified immunity.[2]

---

[1] 42 U.S.C. § 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

[2] The complaint states that Szukhent is sued in both his individual and official capacity.  Section 1983 only allows claims against "persons."  An officer acting in his "official capacity" is not a "person" under § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  A state official can nevertheless be sued in his official capacity for injunctive relief.  Id.  Here, Ward's only claim is for damages.  Thus, insofar as Szukhent is sued in his official capacity, he is immune from suit.  The § 1983 claim can only proceed against Szukhent in his individual capacity.

**i.**

Section 1983 on its own creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To bring a claim under 42 U.S.C. § 1983, Sparks must "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Miller v. Sanilac Cnty., 606 F.3d 240, 247 (6th Cir. 2010) (internal citation omitted).

However, when government officials perform discretionary functions, they are immune from suit through qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Supreme Court applies a two-step inquiry when determining qualified immunity claims: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. Second . . . , the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 815-16 (citing Saucier v. Katz, 533 U.S. 194 (2001)). Courts may exercise discretion in deciding which of the two prongs to address first. Id. at 818.

As the Sixth Circuit has explained,

> Because "[q]ualified immunity is an affirmative defense . . . [t]he defendant bears the burden of pleading" it in the first instance. The burden then shifts to the plaintiff, who must show that the official violated a right so clearly established "that every reasonable official would have understood that what he

5

> [was] doing violate[d] that right." The plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." If the plaintiff fails to carry this burden as to either element of the analysis, qualified immunity applies and the state official is proof against the plaintiff's suit.

Cockrell v. City of Cincinnati, 468 F. App'x 491, 494 (6th Cir. 2012).

### ii.

Under the Fourth Amendment, an officer may not use excessive force to effectuate an arrest. Smoak v. Hall, 460 F.3d 768, 783 (6th Cir. 2006) (citing St. John v. Hickey, 411 F.3d 762, 771 (6th Cir. 2005)). "Courts must determine whether a particular use of force is reasonable based on 'the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight'." Id. (citing Graham v. Connor, 490 U.S. 386 (1989)). Officers are given deference for "on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." Id. (quoting Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002)).

### iii.

Here, factual issues prevent the Court from granting qualified immunity to Szukhent. First, Szukhent says the shooting was accidental because he merely reacted to the K9's tug on the leash. Ward says the K9 did not bark, growl, or lunge at him. At this stage, the Court must look at the evidence in a light most favorable to Ward. That being said, a fact issue remains as to whether the shooting was accidental. It is questionable why Szukhent even had his finger on the trigger if, as he claims, he was holstering his gun. As a police officer who carries a gun on a daily basis, Szukhent would have been well aware that his finger should not have been on the trigger.

Second, the parties dispute (1) whether Ward had his hands on his waist as he ran from Roti and (2) whether Ward returned his hands into the doghouse after bringing them out. Both parties' characterization of what happened is equally plausible.

Ward's position that his hands were never returned to the doghouse after he complied with Szukhent's commands is supported by both Roti's and Szukhent's incident reports written on the night of the shooting. In Roti's report, he writes,

> While at the fence Tpr. Szukhent exclaimed, "there he [Ward] is," as I observed his flash light point to a small wooden dog house off to my left. Tpr. Szukhent began to order the suspect out of the dog house, advising him to show us his hands. While the suspect was being ordered out I displayed my taser. I initially observed the suspect's feet coming out of the dog house, followed by the suspect's hands grabbing the top of the door opening. *The suspect was inching his way out of the dog house using both his hands and feet. I did not see any weapons in the suspect's hands at that point, so I started to secure my taser in my taser holster so that I could use my hands to take the suspect into custody.* As I holstered my taser I heard a loud "pop," off to my right. Not knowing what had immediately happened and keeping focus on the suspect I quickly took the suspect into custody, putting him in the prone position, and handcuffing him with his hands behind his back. After I secured the suspect Tpr. Szukhent secured his dog away from the suspect.

Szukhent's report contains a similar description of events:

> I verbally ordered the suspect out of the doghouse. The suspect began crawling out in a seated position, feet first. *Once the suspect put both hands out of the doghouse and I could see they were empty I began to holster my weapon.* At that same time K9Palin lunged forward toward the suspect. As I pulled back on the leash, I accidently discharged my weapon.
> . . .

Looking at the evidence in a light most favorable to Ward, Szukhent's use of force may have been objectively unreasonable. Ward was unarmed and the officers saw that his

hands were empty. It cannot be disputed that Szukhent had his finger on the trigger of his gun. These factual issues prevent the Court from granting summary judgment on this claim.

### 2. State of Michigan

Ward says the State of Michigan is liable for its failure to adequately train Szukhent or to implement proper procedures for the use of force on a non-resisting subject.[3] The State says is entitled to immunity under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution states that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any Foreign State." U.S. Const. amend XII. The Eleventh Amendment prohibition "specifically prohibits federal courts from entertaining suits brought directly against the states or its agencies." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993). Thus, the states and their departments are immune from suit in federal court unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. O'Hara v. Wigginton, 24 F.3d 823, 826 (6th Cir. 1993).

As the court recognized in Stewart v. Muskegon Heights Police Dept., "the State of Michigan (acting through the Michigan State Police) is not a 'person' who may be sued under § 1983 for money damages." No. 1:12-cv-718, 2012 WL 4501256, at *2 (W.D. Mich.

---

[3] Ward notes that he has not had the opportunity to conduct any discovery beyond the initial Rule 26 disclosures and the proofs necessary to establish a failure to train claim are not currently available.

Sept. 28, 2012) (citing Lapides v. Bd. of Regents, 535 U.S. 613 (2002)); see also Kyles v. Michigan State Police, No. 12-12026, 2012 WL 3779011 (E.D. Mich. Aug. 31, 2012) (holding Eleventh Amendment barred excessive force, unlawful arrest, and malicious prosecution lawsuit against Michigan State Police); Garrett v. Adams, No. 09-13141, 2010 WL 5295732 (E.D. Mich. Dec. 15, 2010) (dismissing claim against State of Michigan and Michigan State Police Department on the basis of Eleventh Amendment Immunity); Williams v. Flint Tp. Police Dept., No. 08-15334, at *3 (E.D. Mich. Jan. 16, 2009) ("The State of Michigan . . . and the Michigan State Police enjoy immunity from suit under the Eleventh Amendment . . . because the State has not consented to being sued in civil rights actions in the federal courts."). Here, Ward's suit alleges excessive force and he seeks money damages. The State of Michigan has not waived its immunity; to the contrary, it has asserted its immunity as a basis for dismissal. Accordingly, the Eleventh Amendment bars suit against the State of Michigan.

**B. State Law Claim**

Ward claims Szukhent was grossly negligent under MCL 691.1407 and liable for assault and battery. Under Michigan's Tort Liability Act, a governmental employee is not liable for personal injuries sounding in tort provided the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(c). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. Id. at § 691.1407(7)(a). Michigan law provides that a governmental employee is entitled to immunity for an intentional tort if "(1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed

9

he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature." Odom v. Wayne Cnty., 482 Mich. 459, 461 (2008).

Although Ward's brief in opposition to summary judgment asserts a claim of assault and battery, the complaint does not. The complaint simply states that Szukhent was grossly negligent, acted intentionally and so recklessly as to demonstrate a substantial lack of concern as to whether injury would result. Essentially, Ward's "gross negligence" claim arises out of Szukhent's alleged use of excessive force. Gross negligence cannot be maintained as a separate cause of action; "the only cause of action available to [Ward] for allegations of this nature would be for assault and battery." Bletz v. Gribble, 641 F.3d 743, 757 (6th Cir. 2011).[4] Ward must amend the complaint to state a cause of action for assault and battery. If this is done, the same fact issues that prevent summary judgment on the excessive force claim prevent summary judgment on the assault and battery claim. Namely, whether Szukhent's pulling of the trigger was intentional or accidental.

## V. CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Claims against the State of Michigan and Szukhent

---

[4] Although gross negligence cannot be a separate cause of action under Michigan law, it remains important in regards to the immunity analysis. A governmental employee is not liable for actions that do not amount to gross negligence. Mich. Comp. Laws. § 691.1407.

10

in his official capacity as a Michigan State Trooper are DISMISSED.  The case continues against Szukhent individually.

    SO ORDERED.


Dated:  November 16, 2012         S/Avern Cohn  
                                        AVERN COHN  
                                        UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 16, 2012, by electronic and/or ordinary mail.

                                         S/ Julie Owens  
                                        Case Manager, (313) 234-5160